```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


CAROLYN FRANCIS ALBARADO STOWE                        CIVIL ACTION

v.                                                    NO. 13-0390

MORAN TOWING CORPORATION                              SECTION "F"
```

ORDER AND REASONS

Before the Court are two motions: (1) Moran Towing Corporation's Motion for Summary Judgment; and (2) the plaintiff's Motion for Partial Summary Judgment on the Issue of Whether Moran Towing Breached Its Duty of Care. For the reasons that follow, the defendant's motion is GRANTED in part and DENIED in part, and the plaintiff's motion is DENIED.

Background

This case arises from allegations that Moran Towing failed to provide timely, adequate medical treatment after its engineer, Michael Hebert, suffered a heart attack on board the M/V TURECAMO GIRLS.

Michael Hebert was employed by Moran Towing Corporation as the Chief Engineer on the M/V TURECAMO GIRLS, a tugboat owned and operated by Moran. On February 29, 2012 he boarded the tug, which was tied up at the Moran dock in Staten Island, New York, for a regular hitch. After Mr. Hebert completed some paperwork, he told the captain, Thomas Cassidy, that he was tired and went to bed.

Later that evening Mr. Hebert began experiencing chest pain. Several hours after the onset of the pain, Mr. Hebert went to Captain Cassidy at around 23:10 and complained that he was experiencing chest pain and weakness; he asked the captain to take him to the hospital. Captain Cassidy radioed the Moran dispatcher, informing him that he was taking Mr. Hebert to the hospital because he was feeling ill. Mr. Hebert went back below deck to retrieve his coat and insurance card; Hebert and Cassidy then walked to Cassidy's personal vehicle, which was parked on the dock. Cassidy used the Google application on his personal telephone to locate directions to a nearby hospital, and drove Hebert there.

But the first hospital Cassidy drove to turned out to be a closed, psychiatric facility that could not provide care to Hebert. After Cassidy tried, but failed, to get into the facility, he approached an ambulance and its crew of E.M.S. workers, who happened to be in the parking lot at the facility; he asked them where the nearest hospital was located. The E.M.S. workers suggested two hospitals, and Cassidy asked Hebert which one he preferred. Hebert responded, "I don't care, just get me to the one that is the closest", and he got back in Cassidy's car.

Cassidy drove to Richmond University Medical Center, arriving at around 23:51; he dropped Hebert off in front and then parked his vehicle. When Cassidy entered the hospital and realized that Hebert was still in the waiting room area, he informed the staff

2

that Hebert was suffering from chest pains and weakness. A nurse then took Hebert back to the triage area to be treated; Cassidy asked Hebert to call when he knew something. Hebert said that he would, and Captain Cassidy returned to the vessel.[1]

At the hospital, Mr. Hebert was found to be "alert, awake and in no distress." He described his pain as having begun three to four hours earlier. Upon evaluation, including an ECG recorded at 00:08 on March 1, 2012, Dr. Alexander Tsukerman determined that Hebert had suffered a heart attack; Mr. Hebert was treated with several medications. Because RUMC was not equipped to care for cardiac emergencies, Mr. Hebert was then transported to a facility capable of administering cardiac treatment, Staten Island University Medical Center; at 01:29. Hebert described four hours of chest pain, which he ignored until it became worse. Hebert was taken to the cardiac catherization laboratory at 01:49, where he underwent a thrombectomy (clot removal) and stint implantation to the left anterior descending artery. Doctors found multiple lesions indicative of pre-existing coronary artery disease. Mr. Hebert was stabilized but was diagnosed with severe left ventricular dysfunction.

After nine days in the hospital, Mr. Hebert was discharged

---

[1] The crew was informed that Cassidy had taken Hebert to the hospital for a possible heart attack; Cassidy stated that he only became aware that Hebert had suffered a heart attack when Hebert called him the next day from the hospital.

with instructions to follow up with a cardiologist in Louisiana for the placement of an internal defibrillator.  He was also provided with materials regarding smoking and diet, and he was flown back to his hometown in Louisiana.  Sixty-two days after his heart attack, he died on May 2, 2012.  His cause of death was presumptive cardiac arrest from a malignant ventricular dysrhythmia, which is common in patients with severe left ventricular dysfunction after a heart attack.

On February 28, 2013 Mr. Hebert's daughter, Carolyn Francis Albarado Stowe, sued Moran Towing Corporation, individually and on behalf of the estate of her deceased father.  Ms. Stowe asserts wrongful death and survival claims under the Jones Act and general maritime law; in particular, Ms. Stowe alleges that Moran's negligence caused her father's death by creating a stressful work environment, and by failing to respond timely and adequately to Mr. Hebert's medical emergency; she also alleges that the TURECAMO GIRLS was unseaworthy with regard to its crew and medical equipment.

Moran Towing now seeks summary relief in its favor and the plaintiff seeks partial summary judgment on the issue of liability.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to

judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio.</u>, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).34

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See <u>id</u>. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. <u>Id</u>. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. <u>Id</u>. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987); Fed.R.Civ.P. 56(c)(2). Finally, in evaluating the summary

judgment motion, the Court must read the facts in the light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 255.

## II.
### *A.*

Under the Jones Act, 46 U.S.C. § 688, a seaman's[2] employer is liable for damages if the employer's negligence caused the seaman's injury, in whole or in part. <u>Gautreaux v. Scurlock Marine, Inc.</u>, 107 F.3d 331, 335 (5th Cir. 1997)(en banc). An employer is liable under the Jones Act if the negligence of its employees played "any part, even the slightest" in causing the injury or death for which damages are sought. <u>Id.</u> (citing <u>Rogers v. Missouri Pacific R. Co.</u>, 352 U.S. 500, 506 (1957)). Even so, the Fifth Circuit clarified that the employer's standard of care is not greater than that of ordinary negligence under the circumstances. <u>Id.</u> at 339. "[A] Jones Act employer is not an insurer of a seaman's safety; the mere occurrence of an injury does not establish liability." <u>Marvin v. Central Gulf Lines, Inc.</u>, 554 F.2d 1295, 1299 (5th Cir.), <u>cert. denied</u>, 434 U.S. 1035 (1978).

To recover damages for his employer's negligence, a seaman must prove that the employer breached its duty of care; ordinary prudence under the circumstances is the standard for the duty of care owed by an employer to a seaman. <u>Gautreaux</u>, 107 F.3d at 335-36. Likewise, seamen are held to the standard of the reasonable

---

[2]Hebert's seaman status is undisputed.

seaman in like circumstances and are obliged to act with ordinary prudence under the circumstances. Id. at 339 (explaining that the circumstances include the employee's reliance on his employer to provide a safe working environment, the seaman's experience, training, or education). And the causation standard is the same for both the employer's negligence and contributory negligence: causation is established if the party's "negligence played any part, even the slightest, in producing the injury". See Martinez, 481 Fed.Appx. 942, 947 (5th Cir. 2012)(quoting Johnson v. Cenac Towing, Inc., 544 F.3d 296, 303 (5th Cir. 2008)). However, more than mere "but for" causation must be established. Johnson v. Cenac Towing, Inc., 544 F.3d 296, 302 (5th Cir. 2008)(citation omitted).

    Among the duties that a Jones Act employer owes to his seamen employees is the duty to provide a reasonably safe place to work and the duty to provide prompt and adequate medical care. See De Zon v. American President Lines, 318 U.S. 660, 667-68 (1943)("The duty to provide proper medical treatment and attendance for seaman falling ill or suffering injury in the service of the ship has been imposed upon the ship-owners by all maritime nations.")(quoting The Iroquois, 194 U.S. 240 (1904)); see also De Centro v. Gulf Fleet Crews, Inc., 798 F.2d 138, 140 (5th Cir. 1986)("The legal obligation of a ship-owner to attend to the medical needs of its crew are undisputed: A ship owner has a duty to provide prompt and adequate medical care to its seamen."). Of course, the measure of this duty

depends on the circumstances, including the seriousness of the injury or illness and the availability of care. De Zon, 318 U.S. at 688. "Although there may be no duty to the seaman to carry a physician, the circumstances may be such as to require reasonable measures to get him one, such as turning back, putting in to the nearest port although not one of call, hailing a passing ship, or taking other measures of considerable cost in time and money." Id.

*B.*

Independent from a claim under the Jones Act, a seaman has a claim under the general maritime law for injuries caused by the unseaworthiness of a vessel. The duty of a vessel owner to provide a seaworthy vessel is an absolute non-delegable duty; the duty imposes liability without fault. See Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 548-49, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). A ship is seaworthy if the vessel, including her equipment and crew, is reasonably fit and safe for the purposes for which it was intended to be used. Boudreaux v. United States of America, 280 F.3d 461, 468 (5th Cir. 2002)(citation omitted); Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 339, 75 S.Ct. 382, 99 L.Ed. 354 (1955) ("The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm but a vessel reasonably suited for her intended service.").

Unseaworthiness is not a fault-based standard; a plaintiff must show, however, that the unseaworthy condition "played a

substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Phillips v. Western Co. of North America, 953 F.2d 923, 928 (5th Cir. 1992). "[A]n isolated personal negligent act of the crew" is not enough to render a ship unseaworthy. Daughdrill v. Ocean Drilling & Exploration Co., 709 F. Supp. 710, 712 (E.D. La. 1989). Instead, there should be evidence of "a congeries of acts." Id. (quoting Robinson v. Showa Kaiun K.K., 451 F.2d 688, 690 (5th Cir. 1971)).

"A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage might be improper." Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 517-18, 27 L.Ed.2d 562 (1971)(internal citations omitted); see also Webb v. Dresser Indus., 536 F.2d 603, 606 (5th Cir. 1976), cert. denied 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977). A vessel is unseaworthy when an unsafe method of work is used to perform vessel services. Rogers v. Eagle Offshore Drilling Serv., 764 F.2d 300, 303 (5th Cir. 1985); Burns v. Anchor-Wate Co., 469 F.2d 730 (5th Cir. 1972).[3]

---

[3] A seaman has a duty under both the Jones Act and general maritime law to act as an ordinary prudent seaman would act in the same or similar circumstances. Jackson v. OMI Corp., 245 F.3d 525,

III.

A. Whether Moran Breached Its Duty of Care

The plaintiff seeks judgment as a matter of law that Moran breached its duty of care to provide Hebert with prompt medical attention when (a) it failed to properly implement a policy for medical emergencies; (b) it failed to train its crew on Moran's Operating Policies and Procedures Manual; (c) its crew failed to follow Moran's Operating Policies and Procedures Manual; (d) its crew failed to call 911 and otherwise failed to maintain phone numbers for, directions to, and familiarity with local hospitals. Moran counters that, at the very least, there exists a genuine dispute as to the reasonableness of Moran's and Captain Cassidy's conduct, which defeats the plaintiff's request for partial summary judgment. The Court agrees.

The plaintiff's arguments focusing on whether or not Moran had a policy respecting how to respond to emergency situations and whether or not it was followed fail to advance the resolution of whether Moran breached its duty of care. It is undisputed that Moran had a policy with an "Emergency Policy & Procedures" section urging its crew to act "timely" in an emergency "to minimize damage to life"; and, the manual contains a check-list for "procedures

---

528 (5th Cir. 2001). If a seaman's negligence contributes to his injury, his "contributory negligence will not bar his recovery, but may reduce the amount of damages owed proportionate to his share of fault." Jauch v. Nautical Services, Inc., 470 F.3d 207, 213 (5th Cir. 2006).

which may be followed in dealing with an emergency", including such steps as administer first aid and notify the dispatcher. But the plaintiff does not suggest that first aid should have been administered; and the Captain called the dispatcher.

The plaintiff's true complaint, and the issue that partial summary judgment in her favor on liability hinges upon, is whether the Moran crew was negligent in failing to call 911; the only reasonable response, the plaintiff contends, when presented with an ambulatory crewmember who complains of weakness and chest pains and asks to be taken to the hospital, would have been to call 911. Failing that, the plaintiff suggests that Moran was negligent in its failure to maintain phone numbers for, directions to, and familiarity with local hospitals. Moran contends that, according to Captain Cassidy, there was no perceived emergency and he acted reasonably under the circumstances in driving Hebert to the hospital, as requested; whether Moran breached its duty to provide prompt medical assistance must await trial. The Court agrees.

The record establishes that, after Hebert had turned in for the night, he told Cassidy that he needed to go to the hospital because he was experiencing chest pains and shortness of breath. Hebert was able to communicate and walk around without assistance; he went to retrieve his coat and insurance card. Cassidy called dispatch and Googled directions to hospitals in the area. Cassidy observed, and hospital personnel reported, that Hebert was "alert,

awake and in no distress." The parties genuinely dispute whether Cassidy appreciated, or should have appreciated, the seriousness of Hebert's condition; they also dispute whether, under the circumstances presented, Cassidy took reasonable measures to get Hebert to a hospital or whether, instead, the only prudent course was to call an ambulance or call local hospitals to determine which ones could accept patients suffering a heart attack. It is settled that the measure of the employer's duty to provide prompt and adequate medical care depends on the circumstances, including the seriousness of the injury or illness and the availability of care. See De Zon, 318 U.S. at 688. Resolution of whether Moran discharged its duty to provide Hebert with prompt, adequate medical care must await trial. Such issues are patently fact-intensive.

    B. Zone of Danger, Medical Causation, and Non-Pecuniary Damages

Moran seeks judgment as a matter of law that (1) neither the Jones Act nor the general maritime law afford recovery for a heart attack allegedly caused by job-related stress unless the decedent sustained a physical impact or was in the zone of danger; (2) the plaintiff cannot prove medical causation; and (3) the Jones Act bars recovery of non-pecuniary damages.

    1. Zone of Danger

The plaintiff does not oppose dismissal of her claim that Hebert's heart attack was caused by job-related stress. Finding

merit in the defendant's submission, that claim is dismissed.

   2.  Medical Causation

Moran contends that the plaintiff cannot prove medical causation because the undisputed medical evidence defeats her claim that the time it took to drive Hebert to the hospital caused his death.  The plaintiff counters that the experts disagree on this point, which mandates denial of Moran's motion on this ground.

Moran's expert, Dr. Sander, focused on the importance of the time that Hebert allowed to pass before disclosing his symptoms to the crew:

> What is critically important to understanding the key issue in this case is that Mr. Hebert told both Dr. Tsukerman at RUMC and Dr. Diab at SIUH that he had chest pain for at least three, but possibly four, hours, and had ignored the pain initially.  Thus the infarction most likely began around 21:00 when Mr. Hebert was noted to be "tired."  Thus the "window of opportunity" for optimal myocardial salvage had already expired when Mr. Hebert requested that Captain Cassidy take him to the hospital. The time delay to angioplasty was largely driven by Mr. Hebert's delay in asking for assistance from Captain Cassidy.  Thus, it is more likely than not that any delays that resulted from Captain Cassidy's responding to Mr. Hebert['s] request to be taken to a hospital and then transporting him to the best of his ability did not significantly alter Mr. Hebert's final outcome.

But the plaintiff submits that the issue of whether Hebert should have appreciated his symptoms sooner is certainly an issue of contributory negligence for the trier of fact.  Moreover, the plaintiff contends that Dr. Sander hedges in his opinion by stating that the delay resulting from Captain Cassidy's failure to call an ambulance "did not **significantly** alter Mr. Hebert's final outcome."

(emphasis supplied by plaintiff).  The plaintiff disputes the defendant's timeline as to when Hebert arrived at the hospital and when he was seen by a doctor, and focuses on the applicable causation standard: whether there is some evidence that Moran's negligence played a part, however small, in the development of Hebert's illness and condition.  And, the plaintiff invokes her own expert, Dr. Staab, who opines:

> It is well-established that the outcome of a myocardial infarction is greatly influenced by the time to treatment.  Early and late mortality, left ventricular function, and symptoms of congestive heart failure all improve by reducing the time to opening a closed artery. It is therefore my opinion, to a reasonable degree of medical certainty, that the aforementioned delay in treatment for Mr. Hebert's myocardial infarction-from failing to call for an ambulance that would have taken him directly to an appropriate hospital-led to worse left ventricular function from a larger amount of permanent heart injury and thereby rendered him susceptible to death from cardiac dysrhythmia.

Predictably, Moran submits that Dr. Staab's opinion is equivocal and relies on the assumption that Hebert began having symptoms of chest pains at 11:10 p.m., which Moran contends is discredited by the record, which suggests that Hebert ignored symptoms for hours before alerting the crew.  Rather than advancing resolution of the issue of causation on summary judgment, however, it seems that each side's critique of the other's expert presents fact disputes awaiting cross-examination at trial.  Viewing the facts in the light most favorable to the plaintiff, and considering the slight causation standard, the Court finds that the parties have presented

14

a genuine dispute regarding the issue of causation, precluding summary judgment.

3.  Availability of Non-Pecuniary Damages

Moran seeks dismissal of the plaintiff's claims for non-pecuniary damages, including her attempts to recover for loss of love and affection, consortium, society, as well as punitive damages.

The plaintiff is limited by the Jones Act to recovery of pecuniary losses. Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990); De Centeno v. Gulf Fleet Crews, Inc., 798 F.2d 138, 141 (5th Cir. 1986)(citation omitted). To the extent that the plaintiff seeks to recover non-pecuniary damages as part of her Jones Act claim, those claims for loss of love and affection, consortium, and society must be dismissed.

Of course, punitive damages are available as a remedy to seamen under the general maritime law claim of unseaworthiness. See McBride v. Estis Well Service, L.L.C., 731 F.3d 505, 517-18 (5th Cir. 2013). Plaintiff alleges an unseaworthiness claim. However, "punitive damages recovery always requires a finding of willful and wanton conduct", the sort of culpability that Moran suggests is missing on this record, where Captain Cassidy, even if he did so negligently, immediately attempted to get Hebert the medical attention he requested. See id. The Court agrees. The plaintiff's punitive damages claim is therefore dismissed.

Accordingly, the defendant's motion for summary judgment is GRANTED in part (to the extent defendant seeks dismissal of the plaintiff's non-pecuniary damage claims and punitive damage claim and to the extent defendant seeks dismissal of the plaintiff's claim that Hebert's heart attack was caused by job-related stress) and DENIED in part (to the extent defendant seeks summary relief on the issue of medical causation), and the plaintiff's motion for partial summary judgment is DENIED.

New Orleans, Louisiana, January 22, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE